IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT MALCOLM JACKSON, #293337      *
       Petitioner
         v.              *      CIVIL ACTION NO. AMD-05-547

JAMES PEGUESE, et al.,      *
       Respondents

                 ***

MEMORANDUM

Robert Malcolm Jackson ("petitioner") filed this 28 U.S.C. § 2254 action attacking his 2000 convictions and sentences imposed in the Circuit Court for Baltimore City for first degree murder and the use of a handgun in commission of a crime of violence. Paper No. 1. Respondents  filed an answer and petitioner filed a traverse.[1]  Paper Nos. 15 and 25.

After consideration of the pleadings and exhibits, the court sees no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(d) & (e)(2). For following reasons, the petition is denied and dismissed with prejudice.

I. Procedural History

On June 24, 1998, at approximately 3:20 p.m., William Gilbert was found by police lying face down in the middle of Jordan Street, an alley of the 300 block of Dolphin Street, in the Bolton Hill community of Baltimore.[2]  Gilbert was pronounced dead at 3:35 p.m. Paper No. 15, Ex. 2 at Tr. 123-130, 140, 184-185, & 199; Ex. 6 at Tr. 25.  An autopsy revealed that Gilbert had been shot five times in the face, neck, back, and buttock. Paper No. 15, Ex. 2 at Tr. 141-143 & 199; Ex. 4 at Tr.

---

[1]In his traverse, petitioner "rescinds" grounds two, nine, and twelve.  Paper No. 25.  The court shall nonetheless review these grounds in this opinion.

[2]This area is in close proximity to the Maryland State Office complex, the Jackson Tower and Bolton House apartments, and the City Temple Baptist Church.

37; Ex. 5 at Tr. 37-49, 51, & 55-56.   Police found in nearby bushes an unloaded 9 millimeter

Makarov semi-automatic handgun.  *Id*., Ex. 2 at Tr. 145, 160, & 174-175; Ex. 3 at Tr. 14, 16, 138-

139, 237, & 239.  No usable fingerprints were lifted from the gun. *Id*.,  Ex. 3 at Tr. 232; Ex. 5, Tr.

at 45.   Ballistics testing, however, established that two bullets recovered from the Gilbert's body

were fired from the Makarov and that seven spent Makarov shell casings that were found under

Gilbert's body had been chambered in the Makarov.  Paper No. 15, Ex. 2 at Tr. 166; Ex. 3 at Tr.

202-204, 239, 241, 244-246, 248-250, & 253; Ex. 4 at Tr. 53.  Gilbert's 1991 white Lexus was found

nearby with its engine off, doors unlocked, and keys in the ignition.[3]  *Id*., Ex. 2 at Tr. 130-131 &

146-147; Ex. 3 at Tr. 209, 218-222, & 232.  Gilbert was found with his driver's license, personal

papers, and credit cards, and $336.00 on his body.[4]  *Id*., Ex. 2, at Tr. 169-174 & 189-192.

Petitioner was charged with the crime and arraigned in the Circuit Court for Baltimore City

on first degree murder and a related handgun offense in March 1999.  *Id*., Ex. 1.  He pleaded not

guilty and elected to proceed before a jury.  On March 1, 2000, trial commenced, with Circuit Court

Judge John C. Themelis presiding. In the course of trial the state called several witnesses, one of

whom, Courtney Payne, a 16-year old male who lived in the neighborhood of the homicide,

identified petitioner as the man who shot Gilbert.  Officers Jack White, Sharon Cox, Allen Stokes,

Judith West, Mary Somers, and Major Mark Werner all gave testimony describing what they heard

and saw, including various descriptions of the assailant who shot Gilbert. Paper No. 15, Exs. 2, 3,

& 5.  In addition, Richard McMurray, a prison informant, testified as to incriminating statements

---

[3]A technician testified that latent fingerprints recovered from the 1991 Lexus did not belong to petitioner. Paper No. 15, Ex. 3 at Tr. 218.  She also testified that she could not say that petitioner was in the car. *Id*., Ex. 3 at Tr. 232-233.

[4]Included in the personal papers was an automobile service bill from a Baltimore Lexus dealership from the morning of June 24, 1998, and street directions to Morgan State University.

made to him by petitioner while both were incarcerated in the Baltimore City Detention Center in January1999. *Id.*, Ex. 5. Additional testimony was received from: (1) petitioner's work supervisor and another student assistant at Morgan State University's Soper Library;[5] (2) Michael Peppers, an out-of-state visitor who stayed at petitioner's mother's house immediately before the homicide and whose 9 millimeter Makarov gun was found missing from the spare tire compartment of his vehicle days after the homicide; and (3) Gilbert's wife, daughter, and the office manager of his business, Gilbert Connections. *Id.*, Ex. 3. Further, the sign-in log sheet and still surveillance photographs from a video camera at a State office building were introduced to show petitioner's presence in the building at approximately 3:55 p.m. on June 24, 1998.[6] *Id.*, Ex. 4. In addition, telephone and pager billing and register information was entered into evidence to link petitioner to communications made to Gilbert's office and cell phone in the month prior to the murder. *Id.*

The jury convicted petitioner of first degree murder and use of a handgun in the commission of a crime of violence. *Id.*, Ex. 7 at Tr. 2-5. On May 10, 2000, petitioner was sentenced to life plus 20 years in prison, with the first five years of the twenty-year sentence to be served without parole. *Id.*, Ex. 7, Tr. at 20-21.

In his appeal to the Court of Special Appeals of Maryland, petitioner raised three questions for review:

1.  Did the trial court err in refusing to declare a mistrial after the jury heard highly prejudicial testimony that was ruled inadmissible?

---

[5]These witnesses, Charlotte Sloan and Zamalia Bennett, testified as to petitioner's work schedule and physical appearance on June 24, 1998. In addition, Bennett testified that she saw petitioner enter the passenger side of a white car, either "an Acura Legend or a Lexus," in the early afternoon of June 24, 1998. Paper No. 15, Ex. 3.

[6]It was alleged that Gilbert was in the process of selling his white Lexus in the Bolton Hill area when he was shot. Paper No. 15, Ex. 2.

2.      Did the trial court err in admitting evidence that the police spoke to many people before obtaining an arrest warrant for petitioner? and

3.      Did the trial court err in denying petitioner's mid-trial request to discharge counsel?

Paper No. 15, Exs. 10-12.

On September 20, 2002, the Court of Special Appeals of Maryland affirmed the judgment and issued its mandate on October 21, 2002. *Id.*, Ex. 13. Petitioner filed a petition for writ of certiorari with the Court of Appeals of Maryland and, in so doing, abandoned his claim of trial court error in the admission of evidence that police spoke to many people before obtaining an arrest warrant. *Id.*, Ex. 14. On February 14, 2003, the Court of Appeals denied the petition. *Id.*, Ex. 15.

On November 24, 2003, petitioner filed a post-conviction petition in the Circuit Court for Baltimore City. *Id.*, Ex. 16. He alleged that: (1) he was denied his right to a speedy trial under Maryland law; (2) the trial judge erred in failing to make a decision when the issue of ineffective assistance was raised prior to the commencement of trial; (3) the prosecutor suppressed exculpatory evidence; (4) he was denied effective cross examination of witnesses; (5) the trial judge failed to suppress a suggestive in-court identification; (6) he was denied his right to effective assistance when his request to discharge counsel was denied mid-trial; (7) the trial judge's sequestration order was violated; (8) the prosecutor engaged in misconduct and inappropriate behavior; (9) he was denied effective assistance of counsel;[7] (10) the trial judge failed to give an identification instruction to the

---

[7]Approximately 15 ineffective assistance claims are raised under this ground, e.g., counsel's failure to: ensure that evidence was produced; become familiar with evidence related to a prison informant witness who may have "actually been the culprit in the crime;" contact and produce rebuttal and alibi witnesses and to ensure that all recalled witnesses could be produced; obtain a copy of petitioner's prior convictions, which resulted in petitioner not testifying on his own behalf; request a latent fingerprint comparison/analysis for the prison informant witness; elicit from petitioner "exactly what the basis of his defense was;" raise the issue
(continued...)

jury; and (11) he was denied his right to counsel when questioned by police without the presence

of an attorney after his arrest and reading of his *Miranda* rights and when a prison informant was

used by police to solicit inculpatory information.  Paper No. 15, Ex. 16.

On April 1, 2004, a post-conviction hearing was held before Circuit Court Judge Stuart R.

Berger.[8]  *Id.*, Ex. 17.  Post-conviction relief was denied on May 13, 2004.  *Id.*, Ex. 18.  On January

12, 2005, the Court of Special Appeals denied the application for leave to appeal.  *Id.*, Ex. 20.

Petitioner filed this § 2254 application claiming that:

1.    The trial court erred in refusing to declare a mistrial after the jury heard highly prejudicial testimony from Detective Welsh that was ruled inadmissible;[9]

2.    The trial court erred in admitting Detective Welsh's testimony that the police spoke to many people before obtaining an arrest warrant for petitioner;

3.    The trial court erred in denying petitioner's request to discharge counsel made shortly after the state rested its case;

4.    The court violated his speedy trial rights under Maryland Rule 4-271 by postponing his trial without good cause;

5.    The trial court erred in not making a decision when the issue of ineffective assistance of counsel was raised prior to the commencement of trial;

6.    The prosecutor suppressed exculpatory evidence (a videotape);

7.    Petitioner was denied effective cross-examination of witnesses when the witnesses testified without the benefit of review of videotape or photographic evidence;

---

[7](...continued)
of the suggestive show-up under after the in-court identification; interview the state's witnesses or witnesses favorable to petitioner prior to trial; and request a jury identification instruction.  Paper No. 15, Ex. 16.

[8]Petitioner was represented by private counsel and by the Office of the Maryland Public Defender on post-conviction review.  Paper No. 15, Ex. 17.

[9]Judge Themelis provided a curative instruction as to this testimony.  Paper No. 15, Ex. 5 at Tr. 51-55.

8.      The trial court refused to suppress an in-court identification that resulted from a "suggestive show-up;"

9.      Petitioner was denied his right to a fair trial when the court's sequestration order was violated;

10.     The prosecutor allowed state's witness Richard McMurray to lie about his custodial status and made inappropriate comments about his mother's veracity during closing argument;

11.     Petitioner was denied effective assistance of counsel during trial;[10]

12.     The trial court failed to give a jury identification instruction; and

13.     Petitioner's right to counsel was violated when a prison informant was utilized to solicit inculpatory information from petitioner.

Paper No. 1 at Attachment.

## II. Threshold Considerations

### A.  Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *See* 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals.  Petitioner no longer has direct appeal or post-conviction

---

[10]Petitioner seemingly wishes to raise all ineffective assistance claims raised in his state court post-conviction petition.  In addition, as an offshoot of ground three, he appears to raise a claim regarding counsel's failure to ensure that certain discovery deficiencies were corrected prior to trial.

remedies available in connection with the claims raised before this court.  He has exhausted the claims presented here.

B. Statute of Limitations

There is no contention that the petition is time-barred pursuant to 28 U.S.C. §2244(d).

C.  Procedural Default

In their answer, respondents state that petitioner is procedurally defaulted from asserting his claims under grounds seven, eight, and ten. These claims relate to the trial court's refusal to delay trial so that petitioner could recall and cross-examine state witnesses with the benefit of videotape and photographic evidence, the trial court's failure to suppress an in-court identification by witness Courtney Payne, and the prosecutor's misconduct in accusing a defense witness of lying and in improperly allowing prison informant Richard McMurray to lie regarding his custodial status at the time of trial. The court agrees with respondents that these particular grounds were not properly raised on direct appeal or post-conviction review.[11] The claims are therefore procedurally defaulted. *See Picard v. Connor*, 404 U.S. 270, 276 (1971); *Wainwright v. Sykes*, 433 U.S. 72 (1977).

Even where a claim has been procedurally defaulted,  this court must still consider whether it should reach the merits of the defaulted claim in order to prevent a fundamental miscarriage of justice.  *See Schlup v. Delo*, 513 U.S. 298 (1995). The miscarriage of justice standard is directly linked to innocence. *Id*. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are

---

[11]Ground seven was not articulated and reviewed by the state post-conviction court in its current form. Further, while the post-conviction court did examine ground eight on the merits and rejected the claim, it initially found that the identification ground is not subject to consideration in a petition for post-conviction relief.  Finally, with regard to ground ten, petitioner's claim of prosecutorial abuse was only raised, in part, on post-conviction review.

defaulted. *Id.* at 314.  The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup*, *supra*. To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327.[12]

> *Schlup* observes that

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Id.* at 323.

The court finds that petitioner has failed to make the requisite showing which would enable this court to consider his procedurally defaulted claims.  He has presented no evidence, nor suggested that any exists, which could satisfy the difficult standard set forth in *Schlup*. Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.[13]

---

[12]Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003).  A petitioner who wishes to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

[13]Even if petitioner's grounds had been properly raised or exhausted, they would entitle him to no relief. First, with regard to the continuance claim the undersigned observes that after the state rested its case, petitioner asked that several state witnesses be recalled against the advice of defense counsel. Judge Themelis refused to postpone the case, but attempted to assist petitioner by bringing all witnesses at issue back to the court. Paper No. 15, Ex. 5 at 132-39; 157-158, & 199; Ex. 6 at 15-17.  With the exception of state's witnesses Sharon Cox and Preston Stokes, who had ongoing medical conditions and procedures, all requested witnesses were recalled and examined by defense counsel.  The court finds that petitioner was afforded the opportunity

(continued...)

D.      Jurisdiction under 28 U.S.C. § 2254

Respondents argue that petitioner's first, second, fourth and fifth grounds of trial court error

are not cognizable because they do not raise any constitutional claims.[14] A claim is cognizable under

§ 2254 if it alleges violations of federal Constitution, laws, or treaties. *See Rose v. Hodges*, 423 U.S.

19, 21 (1975); *Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993).  Violations of state law and

---

[13](...continued)
to call witnesses and the trial court's actions did not violate petitioner's rights.  *See United States v. Clinger*, 681 F.2d 221, 223-224 (4th Cir. 1982) (habeas court should examine identity of witness and nature and relevance of  testimony, along with availability of and due diligence used to obtain attendance).

Second, with regard to the suppression of an in-court identification, it is undisputed that petitioner was brought up into the courtroom in shackles and handcuffs and was seen by Courtney Payne prior to Payne's testimony.  Paper No. 15, Ex. 5 at Tr. 5; Ex. 6 at Tr. 43.  Courtney allegedly told Detective Welsh "that's him" and also overheard an unknown female say "that was him." *Id.*, Ex. 5 at Tr. 18; Ex.6 at Tr. 46. Petitioner claims that this influenced Courtney Payne's subsequent testimony.  Payne testified firmly in making the identification, however, explaining that "[he] was looking dead in his face" and that "[he] cannot forget a face." *Id.*, Ex. 3 at Tr. 147-148. Furthermore, defense counsel attempted to exclude and/or discredit Payne's testimony. *Id.*, Exs. 5 & 6. Additionally, to ensure that Payne's testimony was independent of seeing petitioner walking into the courtroom, Judge Themelis questioned Payne and heard argument on the issue outside the presence of the jury. *Id.*, Ex.6 at Tr. 56.  He concluded that Payne's identification was reliable and "was based upon what the witness saw on the date and time of the shooting when Mr. Gilbert was murdered in this case." *Id.*, Ex. 6 at Tr. 67-68.  Finally, during the course of a hearing on a motion for new trial, Judge Themelis again addressed this exact issue.  In denying the motion, he noted that Payne's testimony was strong and resolute. *Id.*, Ex. 9 at Tr. 36.  The court finds no constitutional error with regard to Judge Themelis's actions and concludes that the decision of the post-conviction court regarding this issue was reasonable. *See Manson v. Brathwaite*, 432 U.S. 98, 110 (1977); *Neil v. Biggers*, 409 U.S. 188, 198-200 (1972).

Third, with regard to the claim of prosecutorial abuse, the court observes that petitioner's claim regarding the alleged false testimony of prison informant Richard McMurray was not raised on post-conviction review. The post-conviction court, however, did recognize petitioner's generalized prosecutorial abuse claim as one challenging the prosecutor's closing comments regarding the truthfulness of petitioner's mother Delia Adams.  It found said claim to be without merit.  Paper No. 15, Ex. 18 at 13-14.  The court finds that Judge Berger's ruling survives review under § 2254(d), and federal intervention is unnecessary.  The prosecutor's comments during trial, *see* Paper No. 15, Ex. 4 at Tr. 109-111; Ex. 6 at 110-111, did not infect the trial with unfairness such that the petitioner was deprived of due process. *See Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986); *Arnold v. Evatt*, 113 F.3d 1352, 1358 (4th Cir. 1997).

[14]These grounds of trial court error include: the refusal to declare a mistrial after the jury heard highly prejudicial testimony from Detective Welsh that was ruled inadmissible (ground 1); the admission of Detective Welsh's testimony that the police spoke to many people before obtaining an arrest warrant for petitioner (ground 2); a speedy trial violation under Maryland Rule 4-271 due to the postponement of his trial without good cause (ground 4); and the failure to make a decision on the issue of ineffective assistance of counsel raised before the court prior to the commencement of trial (ground 5).

procedure which do not infringe on specific federal constitutional protections are not cognizable under § 2254.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The claims at issue relate to Judge Themelis's failure to declare a mistrial, to admit witness testimony, to dismiss the case due to a violation of Maryland rules, and to find petitioner's pre-trial ineffective assistance claim withdrawn from consideration. These claims are not argued based upon a violation of a federal constitutional right.  Rather, they assert nothing more than violations of state evidentiary or procedural law.[15]  Consequently, they are not cognizable grounds for habeas corpus relief.[16]

### III.  Standard for § 2254 Review

Because this petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001).   AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent

---

[15]To the extent that petitioner's claim under Maryland Rule 4-471 or *Hicks v. State*, 285 Md. App. 310 (1999), may be construed as a Sixth Amendment speedy trial claim, the court finds no merit. *See* Paper No. 15, Ex. 17 at Tr. 129-132    Petitioner was arrested and brought back to Baltimore from Trinidad in January 1999, and arraigned in March 1999. The original trial date was July 13, 1999.  In June 1999, however, petitioner replaced court-appointed counsel, Robert Cooper, with private counsel, Richard Boucher, rendering it impossible to proceed on the assigned date. Trial was then calendared for September 21, 1999.    On September 13, 1999, Boucher formally withdrew his appearance, resulting in Cooper getting back into the case. According to petitioner, the trial was twice postponed on September 19 and December 2, 1999.  The court has examined the length and reason for the delay and whether petitioner asserted his speedy trial right and was prejudiced by the delay. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).   The court finds that petitioner has not demonstrated that the delay was of constitutional dimension.

[16]The undersigned observes that grounds one and two were examined on direct appeal and grounds four and five were examined on post-conviction review. *See* Paper No. 15, Ex. 13 at 17; Ex. 18. Even assuming these grounds set out colorable claims under 28 U.S.C. § 2254, the court finds no basis for overturning the decisions of the Maryland appellate and post-conviction courts. *See* 28 U.S.C. §§ 2254(d) & (e).

possible under law.  *See Bell v. Cone*, 535 U.S. 685, 693 (2002).  Pursuant to statute, a federal court

may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established federal law, as
>        determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented in the
>        State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh

v. Murphy*, 521 U.S. 320, 333,  n.7 (1997), "which demands that state court decisions be given the

benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*).  In *Williams v.

Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to"

clearly established federal law when "the state court arrives at a conclusion opposite to that reached

by [the Supreme] Court on a question of law or if the state court decides a case differently than [the

Supreme] Court has on a set of materially indistinguishable facts."  *Id*. at 412-413.  A state court

decision is based on an "unreasonable application" of clearly established federal law when "the state

court  identifies the correct  governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  "[A] federal habeas court

making the 'unreasonable application' inquiry should ask whether the state court's application of

clearly established federal law was objectively unreasonable."  *Id*. at 409-410; *see also Wiggins v.

Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. *See Hill

v. Johnson*, 210 F.3d 481, 485 (5th  Cir. 2000).  Section 2254(e)(1) provides that a determination of

a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary.  The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

With these standards in mind, the court will address the merits of petitioner's remaining claims.

*Ground Three*

Petitioner argues that Judge Themelis erred when he denied his request to discharge counsel at mid-trial. This claim may implicate two fundamental rights, a defendant's right to counsel and right to self-representation. The right to self-representation  must be timely asserted and is limited after the commencement of trial. *See Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1999) (defendant has no absolute right to dismiss counsel and to proceed *pro se* once trial has commenced).

According to the transcript, after the defense had presented two witnesses, petitioner sought to call his former defense counsel, Richard Boucher, Esq., and to recall Officer Jack White to the witness stand.[17]   Paper No. 15, Ex. 5 at Tr. 57, 131, & 199-202. Defense Counsel Robert Cooper believed that calling these witnesses was not in the best interest of his client.  Petitioner eventually agreed with regard to Boucher, but continued to demand that counsel call Officer White. Cooper informed Judge Themelis that petitioner wished to cross-examine Officer White. Judge Themelis

---

[17]The trial transcript shows that Petitioner's request to recall various state witnesses against the advice of counsel was first noted on the record after the state rested its case.

would not permit this to occur.  Cooper then informed Judge Themelis that petitioner had indicated

that he wished to discharge defense counsel. Judge Themelis responded:

> Sir, you have done a more than admirable defense.  This man is making demands on
> you that are unreasonable.  He wanted to make, cross examine a witness, and I won't
> let him.  I don't know of any case law that says he is entitled to do it. And I find no
> meritorious reason to let you do it.  If he wants to put on the record more, I'll hear
> him after I discharge this jury today.   As of now, step back and do your job.

Paper No. 15, Ex. 5, Tr. at 202.

Judge Themelis subsequently convinced defense counsel Cooper to recall Officer White and

soon after engaged in conversation with petitioner on at least two occasions to ensure that counsel

had gone over with petitioner any questions petitioner had and that petitioner was satisfied with

counsel's representation.  *Id.*, Ex. 5 at 202, 212-213, & 229-230.  As trial resumed, Judge Themelis

made the following statements:

> All right. Also let me make the record perfectly straight. [The] last words out of my
> mouth [were] on the record to the defendant, in which I asked him was he satisfied
> with what happened, and was he, in fact, now satisfied to continue with you, words
> to that effect.  His response was yes.  In fact, I said I didn't want him to do anything
> stupid, and he smiled and said thank you.  And  I don't know whether or not that was
> on the tape, because he [has] a soft voice, but that is exactly what happened.

*Id.*, Ex. 6 at Tr. 4-5.

Judge Themelis described  the  circumstances  that  would  have  made  it  ill-advised  for

petitioner to have gone forward without his attorney and the steps that he had taken to resolve the

disagreement  between  counsel  and  petitioner.  *Id.*,  Ex.  6  at  Tr.  5-7  &  11-13.  With  regard  to

petitioner's earlier request to discharge counsel, Judge Themelis concluded that:

I don't think that is what he wants.  And that is why I resisted, and so far I was right, am I right sir?[18]

Paper No. 15, Ex. 6 at Tr. 14.

On appellate review, the Court of Special Appeals of Maryland found no error, concluding that the record showed that the "transitory desire of the appellant to discharge his attorney is something that, through the efforts of Judge Themelis then resolved itself to everyone's satisfaction." *Id.*, Ex. 13 at 7-9.   On post-conviction review, Judge Berger also rejected the claim, concluding that the matter had been finally litigated in the Court of Special Appeals and that Judge Themelis's discretionary decision to deny  petitioner's request to discharge counsel was proper as petitioner's demand came "after the state had presented sufficient evidence and after meaningful trial proceedings had commenced."  *Id.*, Ex. 18 at 11-12.

Petitioner requested the discharge of counsel after the state had rested its case and the defense had presented its initial case through witness testimony. Judge Themelis carefully attempted to resolve the dispute between defense counsel and petitioner and, according to the exhibits before the court, did so to petitioner's satisfaction.   It therefore appears that petitioner abandoned his transitory request to discharge trial counsel.  Based upon a review of the record, the court finds no basis to overturn the state court determinations.   *See* 28 U.S.C. § 2254 (d) & (e).

*Ground Six*

Petitioner alleges that the prosecution violated his due process rights by withholding a requested videotape taken from the State Office Building, Department of Labor security camera. This claim was raised on post-conviction review.  In rejecting the claim, Judge Berger stated:

---

[18]Petitioner answered the question in the affirmative.

Petitioner alleges that the State suppressed exculpatory evidence when the state had a duty to disclose it. Petitioner alleges that the prosecution's withholding of such information violated his due process rights. See Brady v. Maryland, 373 U.S. 83 (1963).

[Also] the state contends that the Petitioner wanted to view evidence sooner rather than later. Therefore, the Petitioner argued that the state's alleged withhold was prejudicial to him. For instance, there was a videotape that the Petitioner argued was not made available to him until the time of trial. The Petitioner argued that viewing the tape prior to it being shown in the court proceeding was the state's attempt to suppress exculpatory evidence.

Petitioner has failed to provide any legal authority in support of this allegation and further, cannot meet the burden with regard to this allegation. As such, there is clearly insufficient evidence to sustain a finding on this allegation.

Paper No. 15, Ex. 18 at 6-7.

["T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecutor." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order for a failure to disclose exculpatory or favorable evidence to rise to a constitutional level, there must be a reasonable probability that the results of the proceeding would have been different had the evidence been disclosed. *See United States v. Bagley*, 473 U. S. 667, 682 (1985).

Judge Berger's ruling shall not be disturbed. The videotape of petitioner in the Maryland Department of Labor building was given to the defense on the first day of trial[19] and admitted into evidence. Petitioner, however, presents no factual assertion that this evidence was exculpatory. Rather, he seemingly states that the evidence should have been presented earlier for trial preparation and strategic purposes.[20] The court concurs with Judge Berger and concludes that petitioner has

---

[19]*See* Paper No. 15, Ex. 2 at Tr. 221.

[20]Petitioner made a similar pro se challenge at trial. Paper No. 15, Ex. 5 at 8-13.

15

failed to show how the videotape was favorable or material to his defense and would have changed the outcome of the trial.  The alleged videotape was not exculpatory.  Indeed, the videotape shows that petitioner was in the vicinity of the homicide at the time of the murder.  Further, even if the evidence could be characterized as favorable to petitioner, he has failed to show how earlier disclosure of the videotape might have altered the result of the proceeding.

*Ground Nine*

Petitioner claims that he was denied his right to a fair trial based upon a violation of the trial court's sequestration order.[21]  This ground was reviewed by Judge Berger on post-conviction consideration.  Judge Berger stated the following:

A Motion for New Trial was heard on June 28, 2000 in front of Judge Themelis addressing three issues: (a) The insufficiency of the evidence; (b) Ineffective assistance of counsel; and (c) the Court violating the sequestration order at trial.  The court has already heard and ruled that the issue pertaining to the alleged violation of the sequestering of witnesses was proper and not prejudicial to the Petitioner.  See Transcript, vol. 8 at 41-86 (where the court thoroughly reviewed and questioned the trial witnesses to verify that the sequester order had in effect not been violated to any level of prejudice to the Petitioner).

As set forth in the Court's analysis of the allegation "Improper In-Court Identification," Judge Themelis held a hearing outside the presence of the jury where Mr. Payne stated that his testimony was based upon what he saw the date and time of the shooting.  Id. at 36.  Therefore Judge Themelis took an additional step to make sure that Mr. Payne's testimony to the murderer's identification was not based upon seeing the Petitioner being walked into court.  Additionally, Judge Themelis asked the jury if there was anyone who was prevented from giving the defendant a fair trial because of anything Judge Themelis, himself, did or did not do or because of any question he asked.  Not one of the jurors indicated that they could not give the defendant a fair trial.

This Court finds in reviewing the court's transcripts and considering oral arguments at Post Conviction hearing did not rise to the magnitude to be prejudicial to the Petitioner.

---

[21]The sequestration order was imposed prior to opening statement.  Paper No. 15, Ex. 2 at Tr. 108.

Paper No. 15, Ex. 18 at 12-13.

Upon review of the trial, motion for new trial, and post-conviction materials, I find that Judge Berger did not unreasonably apply the law in this instance.  Judge Themelis took measures to ensure that Payne's identification was based upon his own recollection of the events of the afternoon of June 24, 1998, and was not influenced by any violation of the sequestration order or otherwise.[22]  The post-conviction ruling shall not be overturned.

*Ground Eleven*

Petitioner alleges that defense counsel Richard Cooper provided ineffective representation. To establish a claim of ineffective assistance of counsel under *Strickland  v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant.  *Id.* at 688, 692.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.  The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged."  *Id.* at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances."  *Id.* at 688.  In its analysis, a court must be "highly deferential," and "must

---

[22]At the hearing for a motion for new trial, the sequestration issue was raised by petitioner in terms of alleged comments made in the courthouse hallway by witness Zamalia Bennett, as overheard by petitioner's friend, Isabel Giorgis.  Paper No. 15, Ex. 9 at Tr. 41-78.  After hearing Giorgis's testimony and argument by counsel, Judge Themelis concluded that the comments, if made, were harmless and not prejudicial in that they did not affect the other testimony presented at trial.  *Id.*, Ex. 9 at Tr. 79-85.

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted).   A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable.  *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.   Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

The instant habeas corpus petition does not raise any particularized claims of ineffective assistance of counsel.   Petitioner is presumably raising those Sixth Amendment claims presented on post-conviction review.  In his post-conviction decision, Judge Berger applied the standard under *Strickland* and found no merit to petitioner's ineffective assistance claims.   Paper No. 15, Ex. 18 at 5-6, 8-9, & 11-12.

The undersigned finds that Judge Berger's decision is supported by the record and is reasonable under Supreme Court precedent. The circumstantial and direct evidence against petitioner was fairly overwhelming in this case. Petitioner has failed to demonstrate that Cooper's representation was constitutionally deficient or that any alleged deficiencies prejudiced his case. Judge Berger's decision shall not be disturbed.

*Ground Twelve*

This claim is that Judge Themelis erred in not giving an identification instruction.  Judge

Berger examined this claim on post-conviction review and issued the following ruling:

> The Petitioner alleges that the Court erred in failing to give a jury identification
> instruction as the issues that the Petitioner relayed pertaining to the alleged improper
> in-court identification allegation.
>
> As held in <u>Gunning v. State</u>, 347 Md. 332 (1996), the decision whether to give
> eyewitness identification instruction lies within the sound discretion of the trial
> court.   The Fourth Circuit has also adopted this flexible rule giving the trial judge
> discretion in determining whether such an instruction is necessary.  <u>United States v.
> Brooks</u>, 928 F. 2d 1403 (4th Cir. 1991).  Maryland Courts have unequivocally held
> that the trial judge is in the best position to evaluate whether such instruction is
> needed to conduct a fair hearing.  Thus, appellate courts would be left to decide only
> issues as to whether the failure to give a special eyewitness identification charge
> would constitute an abuse of the trial court's discretion as to be reversible error.  <u>Id</u>.
> at 381 (<u>citing United States v. Luis</u>, 835 F,.2d 37, 42 (2nd Cir. 1987).
>
> Under these circumstances, there was no error in the trial judge's conclusion that a
> jury instruction was unnecessary and was grounded on the exercise of judicial
> discretion.

Paper No. 15, Ex. 18 at 14-15.

The court has examined the trial record and finds no basis to disturb Judge Berger's ruling.

Again, Judge Themelis found that Courtney Payne's identification was not influenced by outside

sources.  He conducted an independent inquiry of Payne outside the presence of the jury, made

inquiry of the jury, and charged the jury with determining the reliability of any evidence regarding

the identification of the defendant as the person who committed the crime.  Paper No. 15, Ex. 6 at

89-90.   Judge Berger's decision was not an unreasonable application of case precedent. *See United

States v. Brooks*, 928 F.2d 1403, 1408-09 (4th Cir. 1991) (cautionary instruction unnecessary where

there was no danger of misidentification).

*Ground Thirteen*

Petitioner alleges that he was denied his right to counsel when prison informant Richard McMurray was used by the state to solicit inculpatory information.  Judge Berger addressed this issue on post-conviction review and in denying relief reasoned as follows:

> The Petitioner alleges that Richard McMurray was a "police informant" and tried to solicit information from Petitioner that he later testified against Petitioner.  In fact, Mr. McMurray was incarcerated at the same time as the Petitioner and they had befriended one another.  Mr. McMurray testified that Petitioner told him that he unintentionally shot the victim and then preceded to ask Mr. McMurray to take the fall for him.  See Transcript at 109.
>
> There was no police informant involved in this case but rather the evidence shows a classic case of premeditated murder.  The Petitioner alleges that there was a quid pro quo relationship with the State and Mr. McMurray.  In response to such a serious allegation, this Court granted an extension of time beyond the post-conviction hearing to gather and present evidence to this Court regarding such an allegation. Petitioner's counsel submitted a letter indicating that there is no such evidence by stating that there will be no supplement to the record.  Accordingly, there is a complete absence of any evidence of a quid pro quo relationship and that Mr. McMurray received no financial gains or any other benefit for his testimony. Moreover, Mr. McMurray stated that he felt that it was his duty to report this information on his own accord.
>
> Therefore, the lack of evidence does not support the allegation that Mr. McMurray was a prison informant or a state agent when the Petitioner allegedly stated that he shoots the murder victim.  Likewise, there is no evidence that Mr. McMurray had encouraged or solicited that statement directly or indirectly on behalf of the state. Lastly, there is no evidence of an improper interrogation.  The Petitioner was arrested, charged and given his Miranda rights.  As such, any statement made to Mr. McMurray from Petitioner or Petitioner's statement during his police questioning, was not obtained in violation of Petitioner's constitutional rights.

Paper No. 15, Ex. 18 at 15-16.

After review of the post-conviction transcript and Judge Berger's ruling, the court shall not overturn the post-conviction decision. A petitioner fails to establish a violation of the right to counsel when he fails to prove evidence that the witness was acting under the instructions or

solicitations of the government.  *See Harker v. State*, 800 F.2d 437, 444-45 (4th Cir. 1986).  There is absolutely no evidence, aside from petitioner's own self-serving affirmations, that McMurray was paid or acting under the instructions or solicitations of the state.  The "Sixth Amendment is not violated whenever-- by luck or happenstance- the state obtains incriminating statements from the accused after the right to counsel has attached."  *Maine v. Moulton*, 474 U.S. 159, 175 (1985).

### IV. Conclusion

In light of the foregoing, the court finds that petitioner's grounds are subject to procedural default, fail to set out a colorable claim under § 2254, or are otherwise without merit.  The undersigned concludes that there is no basis to overturn the appellate and post-conviction decisions of the Maryland courts.  Accordingly,  this petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice.  A separate Order follows.


Date: January 10, 2007                                    _/s/_____
                                                          Andre M. Davis
                                                          United States District Judge